IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LAURITA PULLMAN, individually and as Personal Representative of the Estate of John Steele, III, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**<br><br>**Defendant.** | Case No.: 8:22-cv-001304-DKC |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

## INTRODUCTION

John Steele, III, ("Decedent") died when his motorcycle collided with the side of a WMATA bus. Both Plaintiffs' and Defendant's accident reconstruction experts agree that Mr. Steele was traveling at a rate of at least twice the posted speed limit just before the impact. Because there are no material facts in dispute and Decedent was undeniably contributorily negligent, this is a clear case in which the Court should find that Decedent was contributorily negligent as a matter of law and grant summary judgment in WMATA's favor.

1

**FACTUAL BACKGROUND**

Mr. Steele was operating his motorcycle on April 30, 2021, traveling eastbound on Ellin Road in Prince George's County, Maryland. *See* Compl. ¶ 16. At the same time, a WMATA bus was traveling westbound on Ellin Road. *See* Compl. ¶ 18. The WMATA bus performed a left-hand turn across Ellin Road, turning into the New Carrollton Metro Station. *See* Compl. ¶ 19. Decedent, on his motorcycle, collided with the side of the WMATA bus. *See* Compl. ¶ 21; *see also Exs.* A-C, Videos 1-3; Ex. D, Plant Dec. Decedent subsequently died from his injuries. *See* Compl. ¶ 23.

Plaintiffs and WMATA both have designated experts who have calculated that Decedent was exceeding the posted speed limit of 30 miles per hour prior to the accident and was still traveling in excess of the speed limit at the time that he came into contact with the WMATA bus. *See* Ex. E, Plant Report, at 2[1], *see also* Ex. F, Lewis Dep. at 31:13-20; Ex. D, Plant Dec. Plaintiffs' expert, Gary Lewis, stated that Decedent was traveling at least at sixty (60) miles per hour when Decedent began his slide. *See* Ex. F, Lewis Dep. at 31:13-20. WMATA's designated expert, David Plant, stated in his expert report that Decedent was traveling at a speed greater than sixty-two (62) miles per hour when he first started to leave a skid mark on the road. *See* Ex. E, Plant Report, at 4-5. Mr. Plant's report also details how, from the cameras inside the WMATA bus, at the time that WMATA's driver began his left-hand turn, that Decedent's motorcycle and headlights would not have been visible to WMATA, and therefore WMATA would not have known of the oncoming traffic or been able to judge Decedent's speed. *See* Ex. E, Plant Report at 16 (Ex. 14 and 15).

---

[1] Plaintiffs' never deposed Mr. Plant. Mr. Plant's report may be used by this Court in considering WMATA's Motion for Summary Judgment. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.); *see also Horsetail Techs., LLC v. Del. State Police Fed. Credit Union*, No. ELH-18-556, 2020 U.S. Dist. LEXIS 107916, at *19 (D. Md. June 19, 2020) ("[W]hen ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence *at trial* regarding a materially disputed factual issue. . . . Thus, the Fourth Circuit has recognized that a court may consider 'otherwise inadmissible materials' on summary judgment so long as 'it will be possible to put the information . . . into an admissible form.'")

WMATA's bus operator testified during his deposition that the roadway was clear when he began his turn. *See* Ex. G, Darby Dep. at 27:21-28:1. In light of the clear findings that Decedent was traveling at least twice the posted speed limit and the undisputed evidence that WMATA's driver exercised due diligence in checking the roadway before commencing the left-hand turn, a finding in favor of WMATA is appropriate, and this Court should grant summary judgment in WMATA's favor.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may assert that there is no material fact in dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

This Court can award summary judgment upon a finding that Decedent was contributorily negligent. "[W]here the undisputed facts are clear, a court can determine the issue of contributory negligence as a matter of law." *Al-Taie v. Seven C's Bldg. Maint., Inc.*, No. TJS-20-0298, 2021 U.S. Dist. LEXIS 160817, *6 (D. Md. Aug. 25, 2021), *aff'd,* No. 21-2034, 2023 WL 4118013 (4th Cir. June 22, 2023); *see also Howard v. Jamesway Corp.*, No. HAR–90–810, 1991 U.S. LEXIS 964, *3 (D. Md. Jan. 28, 1991) ("[S]ummary judgment can be granted on the ground that a Plaintiff was contributory negligent and/or assumed the risk of injury as a matter of law"); *Reid v.*

3

*Washington Overhead Door, Inc.*, 122 F.Supp. 2d 590, 593, 594 (D. Md. 2000) ("While contributory negligence is ordinarily a jury question, the Maryland Court of Appeals has established that a plaintiff can be contributorily negligent as a matter of law when there is no genuine dispute as to the plaintiff's own negligence. . . The Court believes that the undisputed evidence shows that the Plaintiff was contributorily negligent as a matter of law. Because no reasonable jury would find otherwise, the Court has the obligation to grant summary judgment on Plaintiff's negligence claims."); *Union Mem. Hosp. v. Dorsey*, 125 Md. App. 275, 282 (1999) ("Only when the minds of reasonable persons cannot differ is the court justified in deciding the question of a plaintiff's contributory negligence as a matter of law.").

When the allegations central to the claims are captured on video, the Court should view the claims, and the affirmative defenses, in light of such footage. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

> [W]hen the record contains video footage that is not open to more than one interpretation and contradicts the non-movant's assertions, the Court "view[s] the facts in the light depicted by the videotape." This means that when a videotape "clearly depict[s] the events at issue, they will prevail over contrary evidence submitted by either side."

*Hall v. Wash. Metro. Area Transit Auth.*, 33 F. Supp.3d 630, 632 (D. Md. 2014).

## ARGUMENT

### I. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE DECEDENT'S CONTRIBUTORY NEGLIGENCE IS UNDISPUTED

When there are no material facts in dispute and the factual allegations are clear, a court may find contributory negligence and award summary judgment. *See Al-Taie*, 2021 U.S. Dist. LEXIS 160817, at *6. That is the case here. In light of the agreement between WMATA's and Plaintiffs' experts regarding Decedent's rate of speed prior to and at the time of impact and the

video depicting the accident, it is proper for the Court to make the finding that that Decedent was contributorily negligent and the proximate cause of the accident as a matter of law.

Maryland recognizes contributory negligence as a full and absolute bar to recovery. *See Major v. CSX Transp., Inc.*, 278 F.Supp. 2d 597, 616 (D. Md. 2003). Contributory negligence "is defined as 'conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm.'" *Id*. (quoting *Kassama v. Magat*, 792 A.2d 1102, 1110 (Md. 2001)); *see also Harrison v. Montgomery Cnty. Bd. of Educ.*, 295 Md. 442, 451 (1983) *(*"[I]t was the well-established law of this State that a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence").

Decedent's failure to exercise ordinary care in operating his motorcycle undeniably contributed to his own risk of harm. *See* MD. CODE, TRANSP. § 21-801(a) ("A person may not drive a vehicle on a highway at a speed that, with regard to the actual and potential dangers existing, is more than that which is reasonable and prudent under the conditions); MD. CODE, TRANSP. § 21-801(b) ("At all times, the driver of a vehicle on a highway shall control the speed of the vehicle as necessary to avoid colliding with any person or any vehicle or other conveyance that, in compliance with legal requirements and the duty of all persons to use due care, is on or entering the highway); MD. CODE, TRANSP. § 21-801.1(e)(1) ("Notwithstanding any other provision of this subtitle, a maximum speed limit of more than 55 miles per hour may not be established or continued on any highway in this State that is not an interstate highway or expressway); MD. CODE, TRANSP., § 21-901.1(a) ("A person is guilty of reckless driving if he drives a motor vehicle: (1) In wanton or willful disregard for the safety of persons or property; or (2) In a manner that indicates

5

a wanton or willful disregard for the safety of persons or property"); MD. CODE, TRANSP., § 21-901.1(b) ("A person is guilty of negligent driving if he drives a motor vehicle in a careless or imprudent manner that endangers any property or the life or person of any individual).

Plaintiffs and WMATA agree that Decedent was traveling at least 60 miles per hour, at least twice the posted speed limit on Ellin Road of 30 miles per hour. WMATA's expert has concluded that Decedent was traveling in excess of 62 miles per hour prior to the start of the skid. *See* Ex. E, Plant Report, at 4-5; *see also* Ex. F, Lewis Dep. at 31:13-20. As a matter of law, therefore, there is no factual dispute that Decedent operated his motorcycle at an excessive rate of speed. Accordingly, Decedent was contributorily negligent as a matter of law, and Plaintiffs are barred from recovery. Accordingly, this is a case in which the Court may find contributory negligence as a matter of law and grant summary judgment to Defendant.

## II.   PLAINTIFFS ARE FULLY BARRED FROM RECOVERY DESPITE THE BOULEVARD RULE.

### A. The Boulevard Rule Does Not Apply.

The "Boulevard Rule," codified at MD. CODE ANN., TRANSP. § 21-403, "requires the driver of a car approaching an intersection from a road controlled by a stop or yield sign (the "unfavored" road) to stop at the entrance of the intersection and yield the right-of-way to cars traveling on the main road (the "favored" road)." *Bailey v. Musumeci*, No. C-04-CV-17-000076, 2019 Md. App. LEXIS 571, at *1 (July 9, 2019) (citing *Creaser v. Owens*, 267 Md. 228, 239 (1972)); *see also Barrett v. Nwaba*, 165 Md. App. 281, 290 (2005) ("The so called boulevard rule, codified at TRANS. §§ 21-403-404, imposes a duty upon a driver entering or crossing a highway from another highway, private roadway, driveway, or other place to stop and yield the right-of-way to any through traffic on the highway"). In this case, there was no stop or yield sign, and the WMATA

bus was not entering or crossing a highway from another road. Rather, Decedent and the WMATA bus were traveling on the same road, and the WMATA bus was turning left.

The Boulevard Rule does not apply in this case because it would impose on WMATA an impossible duty. There are several circumstances in which the Boulevard Rule does not apply. One such circumstance occurs when an unfavored driver would have an "impossible duty."[2] "To be sure, the boulevard rule 'does not impose upon the unfavored driver the impossible duty of yielding to vehicles the approach of which he cannot discover by making the required stop and using care.'" *Barrett v. Nwaba*, 165 Md. App. 281, 294 (2005) (citing *Standard Oil Co. v. Sheppard*, 148 F.2d 363, 364 (D.C. 1954) (applying Maryland law)); *see also Ness v. Males*, 201 Md. 235, 240 (1953) ("If the jury believed his version, he could hardly be held negligent in entering and making the turn when the way was clear as far as he could see. The obligation to yield the right of way could hardly demand that he remain there permanently or enter at his peril"). *See also Myers v. Brights*, 327 Md. 395, 402 (1992) ("Under other circumstances, however, the turning driver, making a reasonable observation of traffic, will not be able to recognize that the oncoming vehicle is moving faster than the law allows and might reasonably proceed into the turn. Factors that might mask an approaching vehicle's speed from a prudent driver—and thus lead him or her to misjudge the timing of its arrival—could include weather conditions, distance, topography, angle of observation, etc.").

---

[2] Maryland Transportation Article, Section 21–402(a) additionally provides that a vehicle performing a left-hand turn shall yield to the right-of-way of an approaching vehicle that is "in the intersection or so near to it as to be an immediate danger." At the time that WMATA initiated the turn, Decedent's motorcycle was neither in the intersection nor was an "immediate danger." Because Decedent's motorcycle was not visible to WMATA's driver, he could not be considered an "immediate danger" to which WMATA's driver would have been required to yield.

In *Barrett*, defendant did not present evidence that he was unable to see plaintiff's vehicle through due diligence. *Barrett,* 165 Md. App. at 294. The defendant driver claimed that he looked both ways, but he was not able to present any evidence that his view of plaintiff's vehicle was obstructed. In fact, he testified that the roadway was illuminated, and there was no terrain or surounding structures obstructing his view. *Id*. In *Standard Oil*, "there was evidence from which the jury might conclude that the deceased came to a full stop at the proper point and that appellant's truck, approaching at excessive speed and on the wrong side of the highway, did not become visible from that point until after the deceased, in the exercise of due care, had begun to enter the highway." *Standard Oil Co.*, 148 F.2d at 363.

In this case, however, there is undisputed evidence that WMATA's driver could not have seen Decedent's motorcycle at the moment when he began his turn, even exercising due diligence and checking the road. *See* Ex. E, Plant Report. There is a hill on the portion of Ellin Road where Decedent was traveling. *See* Ex. E, Plant Report, *see also* Ex. F, Lewis Dep. at 27:7-29:10. Decedent had to crest the hill prior to traveling to the area where the collision occurred. *Id*. Because of the position of the hill, at the time when WMATA's driver, Douglas Darby, began his turn, "no part of the motorcycle or its headlight would have been visible at this time." Ex. E, Plant Report, at 7. *See also* Ex. E, Plant Report, at 16 (Ex. 14 and 15). In contrast to the facts in *Myers*, here there is clear evidence that WMATA's operator exercised due diligence in checking the roadway for oncoming traffic prior to beginning his turn, and even when exercising such due care, it was impossible to view Decedent's motorcycle or assess Decedent's high rate of speed.

The WMATA bus operator did not have a duty to remain at the intesection indefinitely, unable to complete the left hand turn. At the time that he began his turn, the driver checked the road and did not see Decedent. *See* Ex. G, Darby Dep. at 27:21-28:1 ("I got to the break in the road.

8

I looked for oncoming traffic. It was no traffic coming, and I proceeeded to make the left-hand turn"); (*Id.* at 30:21-31:1: "Well if I didn't see him before I made my turn, I would not have made the turn, if I would have saw him."); (*Id.* at 31:8-9, 11 "Q: And were you able to see him before starting your left turn? … A: No , sir"). WMATA's driver exercised due care, and he was not obligated to wait indefinitely to begin his turn when no vehicles were visible. For that reason, the Boulevard Rule does not apply in these circumstances.

### B. Even if the Boulevard Rule Does Apply, Plaintiffs Are Still Barred from Recovery Because Decedent's Contributory Negligence Proximately Caused the Accident.

Even if the Court does find that the Boulevard Rule applies, despite the fact that it would impose an "impossible duty" on WMATA's driver, the Boulevard Rule does not overcome WMATA's showing that Decedent's negligence was a proximate cause of the accident.

The law in Maryland is clear that the Boulevard Rule does not apply if the favored driver was contributory negligent. "[T]he absolute and unequivocal duty of the unfavored driver to stop and yield the right of way to all traffic during his entire passage through the favored highway is only tempered by the doctrine of last clear chance or a finding of contributory negligence on the part of the favored driver." *Creaser v. Owens*, 267 Md. 228, 249 (1972); *see also Bailey v, Musumeci*, 2019 Md. App. LEXIS 571, at *1 ("This negligence cannot be excused even when the car that hits her is traveling at an unlawful speed if the accident could not have been avoided had the car been going slower"). "[A] plaintiff's negligence is not *ipso facto* contributory negligence unless it is a proximate cause of the accident." *Rosenthal v. Mueller*, 124 Md. App. 170 (1998) (citing *Friedman v. Hendler Creamery Co.*, 158 Md. 131 (1930)). *See also Mayor of Balt. v. Kennon*, No. 554, 2023 Md. App. LEXIS 125, at *23 (Md. App. 2023) ("Specifically with regard to speed, our Supreme Court has held that even negligent and illegal speed will not make a case

9

for contributory negligence unless the excess speed, above what was reasonable, was a proximate cause of the collision").

"It follows from what we have said relative to contributory negligence as a defense to a favored driver's claim against an unfavored driver that the boulevard rule does not relieve the favored driver from the duty to observe that degree of ordinary care for his own safety which is imposed upon all men." *Dean v. Redmiles*, 280 Md. 137, 138 (1977). Excessive speed by a plaintiff can be found to be the proximate cause of the accident and bar any recovery. *See Bailey v. Berman*, No. 24–C–15–001986, 2017 Md. App. LEXIS 1033, at *7 (Md. Ct. Spec. App. Oct. 5, 2017) (collecting cases involving speed on the party of the plaintiff and allegations of contributory negligence, stating that "[a] driver's excessive speed, however, can be a proximate cause of an accident where the speed prevents him or her from taking action to avoid the collision").

It is undisputed that Decedent's speed was a proximate cause of this accident – if Decedent had not been speeding, this accident would not have occurred. Generally, "a violation of a duty imposed by a 'Rules of the Road' statute is evidence of negligence[.]" *McQuay v. Schertle*, 126 Md. App. 556, 576 (1999). As such, evidence of such conduct (that was a proximate cause of a collision) would be sufficient evidence of contributory negligence for the issue to reach the jury. According to WMATA's expert, David Plant, "At 30 mph (i.e., the speed limit) it would have taken 9.1 seconds to travel 401 feet. At 45 mph (i.e., 15 mph over the speed limit) it would have taken 6.1 seconds to travel 401 feet. It is my opinion, to a reasonable degree of scientific certainty, that had the motorcycle been traveling at the speed limit or even 15 mph over the speed limit (rather than at least 62 mph), this accident would not have happened." Ex. E, Plant Report, at 7; *see also* Ex. D, Plant Dec. Notably, Plaintiffs' expert does not opine in his report, supplemental report, or his deposition on the effect of Decedent traveling at a lower speed on the accident

10

occurrence – thereby conceding the issue. *See* Ex. F, Lewis Dep., *see also* Ex. H, Lewis Report; Ex. I, Lewis Supp. Report. Accordingly, it is undisputed that, if Decedent had not been speeding at such an excessive rate, this accident would not have occurred. Thus, Decedent's excessive speed was a proximate cause of the accident.

"'As on the issue of negligence, whether an operator's negligence as to rate of speed was a proximate cause of an accident may be ruled as a matter of law where reasonable persons could not differ on the issue.'" *Myers v. Bright*, 327 Md. 395, 403 (1992) (quoting 2 *Blashfield* § 105.7 at 324 (1979)); *see also Kopitzki v. Boyd*, 277 Md. 491, 495-96 (1976) ("In *Pichbeck v. Baltimore Tank Lines, Inc.*, 258 Md. 211 (1970), we affirmed the granting of a directed verdict for the unfavored vehicle which had been hit by the favored vehicle operating at a speed of 80 miles per hour").

Here, there is no doubt that Decedent was significantly exceeding the speed limit at the time of the crash. *See* Ex. E, Plant Report, *see also* Ex. F, Lewis Dep. at 31:13-20. The Court can even see such speed itself, through the footage of the accident. *See* Exhibits A-C. *See Scott v. Harris*, 550 U.S. 372 (2007). WMATA's expert has calculated how Decedent's excessive speed caused the accident and that if Decedent had been traveling slower, the accident would have been avoided. Thus, if the Boulevard Rule does apply here, Decedent's speed was contributorily negligent to such a degree that he was a proximate cause of the accident, and therefore Plaintiffs may not recover under their wrongful death and survival claims.

## CONCLUSION

WHEREFORE, for these reasons, and for those that may be asserted in a reply to any opposition filed, Defendant Washington Metropolitan Area Transit Authority requests that this

11

Honorable Court grant WMATA's Motion for Summary Judgment and grant any other relief that this Court deems fair and just.

Dated: July 17, 2024                           Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

*/s/ Jason R. Waters*
Jason R. Waters, Esq. (MD Bar No.: 27867)
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Jason.Waters@wilsonelser.com

Patricia H. Beall, Esq. (MD Bar No.: 29593)
1500 K Street, NW, Suite 330
Washington, D.C. 20005
Telephone: (202) 626-7660
Facsimile: (202) 628-3606
Patricia.Beall@wilsonelser.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

Laurie Hand, Esq. (MD Bar No.:11470)
WMATA, Legal Department
7E, P.O. Box 23768
Washington, D.C. 20026
Tel.: (202) 962-5063
Fax: (202) 962- 2550
LAHand@wmata.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this July 17, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

                                                                    */s/ Jason R. Waters*                
                                                                    Jason R. Waters