## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LAURITA PULLMAN, Individually and as Personal Representative of the Estate of John Steele, III,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **Civil No. DKC 22-1304** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | : | |
| | : | |
| **Defendant.** | | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Defendant WMATA moves for summary judgement, alleging that contributory negligence is an absolute bar to Plaintiffs' recovery. WMATA is wrong. Because Mr. Steele was not contributorily negligent and genuine disputes of material fact exist as to whether WMATA's driver had the last clear chance to avoid this deadly collision—an issue completely ignored by Defendant in its Motion— WMATA's Motion should be denied.

In further support of this Opposition, Plaintiffs respectfully refer the Court to the attached Memorandum of Points and Authorities.

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By: ***/s/ Salvatore J. Zambri***
 Salvatore J. Zambri
 szambri@reganfirm.com
 Emily C. Lagan

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

elagan@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C.  20036-3521
PH:  (202) 463-3030
Fax: (202) 463-0667
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of August, 2024, a copy of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment was electronically filed and served on all registered parties.


*/s/ Salvatore J. Zambri*
Salvatore J. Zambri

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LAURITA PULLMAN, Individually and as Personal Representative of the Estate of John Steele, III,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **Civil No. DKC 22-1304** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | : | |
| | : | |
| **Defendant.** | | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

In its motion, WMATA relies heavily on "The Boulevard Rule," as if the applicability (or inapplicability) of it matters. It does not. As discussed below, while the Boulevard does not apply under the facts of this case, it is indisputable that Mr. Steele had the right of way as the favored driver. Moreover, genuine disputes of material fact exist as to whether Mr. Steele was contributorily negligent, and if he was, whether Defendant WMATA's driver, Mr. Darby, had the last clear chance to avoid the collision that cost Mr. Steele his life. Accordingly, WMATA's Motion should be denied.

## I.    Factual Background

### A.  The Collision

On the afternoon of April 30, 2021, Douglas Darby[1] was driving a WMATA bus (the "Bus") westbound in the leftmost lane on Ellin Road, intending to eventually turn left

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

---

[1]    Douglas Darby has mistakenly been referred to as "Darby Douglas" in other pleadings.

into the Defendant's New Carrollton Metro Station.  (Compl. ¶¶ 18-19).  At the same time, John Steele was driving his motorcycle eastbound in the right lane on Ellin Road with the right of way.  (Compl. ¶ 16).  A screenshot from a camera mounted on a nearby building shows the position of the vehicles as they approached the New Carrollton station:

 

Bus in median, 214 feet from m/c

(Ex. 1, Lewis Rpt. at J Steele 000422 (screenshot from Rooftop Fixed 2 video, obtained by Plaintiffs and provided to Defendant in discovery, which WMATA produced to the Court as an exhibit to its Motion)).

As the screenshot shows, the eastbound and westbound lanes of Ellin Road are separated by a median, with a break for traffic to turn at the New Carrollton station.  After the collision, Mr. Darby told responding Prince George's County police officers that he stopped before turning left—a statement made with the clear purpose of convincing the officer he took reasonable care to look for oncoming traffic but ultimately belied by the video footage.  (Ex. 2, Reconstruction Rpt. at 3).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

The videos of the collision—captured both from cameras inside the Bus itself and from cameras mounted on nearby buildings—show that Mr. Darby did not stop before turning left into the New Carrollton station, a direct contradiction of what he told Prince George's County police officers. (Rooftop Fixed 2 Video (produced by WMATA); Ex. 1 at 000415; Ex. 3, WMATA Dep. at 80:4-18). After watching the video at his deposition, WMATA's corporate representative, Gregory Kupka, had to admit that Mr. Darby did not stop before turning:

> Q. Do you see below that there is a very specific question made by the police officer to Mr. [Darby] that reads, did you come to a stop before the left turn? Do you see that question?
>
> **A. I do.**
>
> Q. And the answer there is, for Mr. [Darby], yes, right?
>
> **A. Mr. [Darby] does answer yes in that question. Yes.**
>
> Q. That was an untruthful answer, correct?
>
> Attorney Chandonnet: Objection.
>
> **A. That answer does not match the video that you showed earlier – that was shown earlier.**

(Ex. 3 at 80:4-18).[2]

Before Mr. Darby even began his left turn, Mr. Steele was in plain view:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

---

[2]    Plaintiffs acknowledge that there is no stop sign on Ellin Road where the Bus operator turned left in front of Mr. Steele; however, under the circumstances of this case, and as described below, Mr. Darby should have stopped the Bus. Furthermore, a jury will likely find the fact that Mr. Darby was untruthful to the police as additional evidence of his failure to prudently look for oncoming traffic before turning left.



(Screenshot from WMATA Bus camera, timestamp 15.01.19).

In his report, David Plant, WMATA's accident reconstructionist, included a photograph captured before Mr. Darby began his turn, which similarly shows Mr. Steele was there to be seen:



Exhibit 15. – Zoomed in operator view with bus positioned about 5 seconds before accident

(WMATA Ex. E, Plant Rpt. at 16).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 4 -

When confronted with the photograph at his deposition, Mr. Darby agreed that Mr. Steele was visible,[3] but testified that he did not see him on the date of the crash:

> Q.  Sir, you see a human head appearing in the top of the hill in the middle of this photograph, correct?[4]
>
> **A.  In the middle, right there?**
>
> Q.  Yes.
>
> **A.  Okay.**
>
> Q.  Well, you see that, right?
>
> **A.  Yes, sir.**
>
> Q.  You didn't see that on the day of the incident, you're testifying, correct?
>
> **A.  Correct.**
>
> Q.  And this photograph is taken from your bus.  You'll agree with me that your bus is not even in the eastbound lanes yet, correct?
>
> **A.  Correct.**

(Ex. 4, Darby Dep. at 33:15-34:7).

Mr. Darby agreed that if he had seen Mr. Steele before making the left turn, he would have stopped the Bus:

> Q.  So if you had stopped your bus at this point or soon thereafter, you would not have come into contact with the person traveling that you're seeing in this photograph, correct?

---

[3]   Mr. Darby also agreed there was nothing impeding his view of oncoming traffic.  (Ex. 4, Darby Dep. at 38:8-11). If Mr. Steele was not seen, then Mr. Darby was not looking prudently for oncoming traffic, as there were no obstructions keeping him from seeing what was in plain view.

[4]   Referring to Exhibit 15 from Mr. Plant's report, copied above.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

Attorney Chandonnet: Objection.

**A.  What I would say to that is I – I've always said that I never saw the motorcyclist until I turned my head after I heard the noise.  So I did not see him at all, sir.**

Q.  Let me rephrase it.  If you did see him, as you're seeing him now, you would have stopped your bus, correct?

Attorney Chandonnet: Objection.

**A.  Yes, sir.**

Q.  And you would have stopped your bus, and you would have let him pass you by before you went into the New Carrollton Station, correct?

Mr. Chandonnet: Objection.

**A.  Yes, sir.**

(Ex. 4 at 34:8-22).

Mr. Steele was even more visible as Mr. Darby entered the **turning lane** of eastbound Ellin Road, but Mr. Darby still did not stop:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030



(Screenshot from WMATA Bus camera, timestamp 15.01.21).

When the Bus entered the first through lane—**the left lane**—of eastbound Ellin Road, Mr. Steele was even closer to Bus and in plain sight, but Mr. Darby decided to keep turning:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030



(Screenshot from WMATA Bus camera, timestamp 15.01.22).

Mr. Darby proceeded into Mr. Steele's lane, giving him no opportunity to avoid the crash:



(Screenshot from WMATA Bus camera, timestamp 15.01.22).

Mr. Steele (appropriately) started braking and eventually slid in an effort to avoid the Bus or minimize the impact, but could not avoid colliding with the Bus:



(Screenshot from WMATA Bus camera, timestamp 15.01.24).

As the timestamp in the above screenshot reflects, the moment of impact was approximately 15.02.24, **five seconds after Mr. Steele was first obviously visible to Mr. Darby.** Mr. Steele suffered severe injuries and died later that afternoon.  (Compl. ¶¶ 22-23).

### B.  Expert Testimony

Plaintiff and WMATA each retained accident reconstructionists, who examined the available video footage. Contrary to WMATA's representation that Mr. Darby "could

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

not" have seen Mr. Steele when he began the turn even if exercising due diligence, (WMATA MP&A at 8), video captured from the Bus makes clear three critical facts: (1) Mr. Darby was looking to his left (i.e. not in the direction of oncoming traffic and Mr. Steele) for at least four seconds before the collision, (2) Mr. Steele was visible before the Bus even began its left turn, and (3) Mr. Steele remained plainly visible for more than four seconds (conservatively) before the deadly crash.

As Gary Lewis, Plaintiffs' accident reconstructionist, explained in his report, Mr. Darby was looking to the left prior to and during his turn:

> Reviewing the video of the bus operator's position it appears that the operator is looking slightly to the left and downward from approximately frame 5900 until frame 6024, which covers approximately 4.2 seconds…**Based on these camera views, the video frame rate, and the timer visible in the frames, it appears that the bus driver had been looking to his left for approximately 2 seconds before reaching the median, and continued looking to the left as he made his turn for an additional 2 seconds.**
>
> \*\*\*
>
> Based on the video timing and the camera view of the bus operator, the operator had traveled for approximately 4.2 seconds, and covered over 70 feet, while looking to his left. Approximately 2 seconds of that time, and 35 feet of distance, was while making a left turn across the oncoming traffic lanes and while the oncoming motorcycle would have been clearly visible to the bus operator.

(Ex. 5, Lewis Supp. Rpt. at 1-2) (emphasis added).

Defendant's own accident reconstructionist, David Plant, concedes that Mr. Darby had his head turned to the left for approximately five seconds before the collision.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

(WMATA Ex. E, Plant Rpt. at 7).[5]  Despite Mr. Darby's contention otherwise, WMATA

cannot dispute the fact that Mr. Steele was visible and in plain sight before Mr. Darby

began turning and for approximately five full seconds before the tragic collision.

(WMATA Ex. E, Plant Rpt. at 16).

    Analyzing the photographic and video evidence, Mr. Lewis was more conservative

than Mr. Plant, opining that Mr. Steele was visible for 4.4 seconds prior to impact.  (Ex. 5

at 1).  As Mr. Lewis explained:

> [T]he time between the motorcycle headlight becoming
> visible in the forward-facing camera and impact was
> approximately 4.4 seconds.
>
>        \*\*\*
>
> In Exhibit 15, the motorcycle operator's helmet is clearly
> visible.  Due to the difference between the bus driver's eye
> level and the forward-facing camera's position, this position
> would be near the same position as the bus located when the
> motorcycle's headlight was visible in the forward-facing
> camera.  This position is in the area just before the bus started
> to make its [left] turn.

(Ex. 5 at 2).

    Summarizing the collision and Mr. Darby's failure to avoid it, Mr. Lewis opined in

his report:

> Had the bus operator monitored the intersection for oncoming
> traffic prior to entering and traversing the opposite lanes of
> traffic, instead of looking to his left, he would have been able
> to observe the oncoming motorcycle and avoid this collision.
> In this case, the motorcycle would have been visible to the bus

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

---

[5]    Curiously, in his Declaration, Mr. Plant changed tune, and said that Mr. Darby did turn his head
in the direction of oncoming traffic approximately five seconds before the collision.  (WMATA Ex. D at
¶ 11).  As it likely goes without saying, Plaintiffs would object to Mr. Plant offering this opinion at trial,
as that opinion was never formally disclosed and the deadline for designating experts has long passed.

operator for over 4 seconds.  After failing to monitor the
oncoming lanes of traffic, the bus operator made a left turn
towards the path of the approaching motorcycle, which had
the right of way.  Then, after the driver began the left turn, he
continued across the oncoming lanes of traffic, failing to yield
the right of way to the approaching motorcycle, which was
clearly visible.  A normally attentive driver should have been
able to stop the bus within approximately 2.3 seconds and 33
feet of distance from a speed of 11.6 miles per hour.  The bus
operator should have been able to stop the bus prior to entering
the motorcycle's lane of travel.

(Ex. 5 at 2).

Mr. Lewis further testified during his deposition that Mr. Steele was visible to Mr.

Darby before Mr. Darby began the left turn, that had Mr. Darby been looking in the

direction of oncoming traffic, Mr. Steele would have been visible to him, and that the

collision should have easily been avoided:

Q.  You noted in that supplemental report that roughly 35 feet
of that distance, Mr. Steele would have been clearly visible to
the bus driver, right?

Mr. Chandonnet: Objection.

**A. Correct, the forward camera showed the motorcycle's
headlight visible before the bus started making lateral
movement in the left turn.**

Q.  And you noted in your report that had the bus operator
monitored the intersection for oncoming traffic prior to
entering the intersection instead of looking to the left, he
would have been able to see Mr. Steele, is that right?

Mr. Chandonnet:  Objection.

**A.  Had he looked forward to the bus, the motorcycle
would have been visible prior to the bus beginning the left
turn at the median crossover.**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 12 -

> Q.  And if Mr. – if the bus driver, excuse me, had looked into oncoming traffic and seen Mr. Steele, he would have been able to avoid this collision; correct?
>
> Mr. Chandonnet: Objection.
>
> **A. Yes, ma'am.**

(Ex. 6, Lewis Dep. at 36:17-37:19).

## II.   Legal Standard

Summary judgment is available only "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). "The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine dispute of material fact." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).  "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law.  An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted).  "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar*, 988 F.3d at 761.  "Therefore, **courts must view the evidence in the light most favorable to the nonmoving party** and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (emphasis added).  "A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party." *Sedar*, 988 F.3d at 761.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

## III.    Argument

### A. *Mr. Steele had the right of way.*

WMATA's begins its motion with a puzzling (at best) analysis of the Boulevard Rule. (WMATA MP&A at 6-11). Plaintiffs agree with WMATA: the Boulevard Rule does not apply. Where the parties diverge is on the relevance of the Boulevard Rule; WMATA seems to believe that the Boulevard Rule must apply in order for Plaintiffs to prove that Mr. Steele had the right of way and was the favored driver. (*See* WMATA MP&A at 6-11). Not so. The Maryland Code is crystal clear:

> If the driver of a vehicle intends to turn to the left in an intersection or into an alley or a private road or driveway, the driver shall yield the right-of-way to any other vehicle that is approaching from the opposite direction and is in the intersection or so near to it as to be an immediate danger.

MD. CODE ANN., TRANSP. § 21-402(a).

The Boulevard Rule does nothing to alter or amend this provision of the Maryland Code. **Mr. Steele, as he approached the intersection from eastbound Ellin Road, had the right-of-way at all times, and Mr. Darby was indisputably the unfavored driver.** (Ex. 1 at 000414).

### B. *Mr. Steele was not contributorily negligent.*

WMATA makes much ado about Mr. Steele's speed. (*See generally* WMATA's MP&A). Plaintiffs do not dispute that Mr. Steele's speed exceeded the posted speed limit, but that does not *ipso facto* make him contributorily negligent. "The burden of proving contributory negligence is on the defendant." *Moodie v. Santoni*, 292 Md. 582, 586, 441 A.2d 323, 325 (1982).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

Mr. Steele's speed did not cause this crash.  Defendant cites to Mr. Plant's report and relies on the false premise that Mr. Steele's speed over the skid distance is the lens through which his conduct should be scrutinized. (*See generally* WMATA Ex. E). Defendant is wrong.  The problem with its premise is that it ignores both that Mr. Steele had the right of way **and** the right to assume that Mr. Darby would operate the Bus with reasonable care (specifically by stopping the Bus before entering the lane of a favored driver, as a reasonably prudent bus operator would do). *See Ghirardello v. Malina*, 238 Md. 498, 507, 209 A.2d 564, 569 (1965) ("Although a driver privileged under the statute is entitled to assume that he will be accorded the right of way . . . he cannot continue to rely upon such assumption after he discovers that the unprivileged driver does not intend to yield the right of way." (internal citation omitted)); *Weissman v. Hokamp*, 171 Md. 197, 189 A. 813, 815 (1937) ("He had the right to assume that a driver of the automobile would exercise reasonable care and not drive his machine into the place where passengers are accustomed to get on and off of street cars." (internal quotations and citation omitted)).

Mr. Steele had the right to assume that the Bus was going to stop before it extended into his travel lane (the right lane of eastbound Ellin Road). Accordingly, Mr. Steele's *obligation* to take corrective action began not when he actually first braked, but when the Bus entered his lane—no earlier.  Mr. Plant explained in his report that "the perception response time for this path intrusion hazard is on average 1.6 second[s] . . . ."  (WMATA Ex. E at 5).  As the timestamps on the Bus videos show, Mr. Darby entered Mr. Steele's lane of travel at approximately 15.01.22:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030



(Screenshot from WMATA Bus camera, timestamp 15.01.22).

The impact occurred approximately two seconds later at 15.01.24:



Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

(Screenshot from WMATA Bus camera, timestamp 15.01.24).

Assuming—based on Mr. Plant's estimate—that it would have taken Mr. Steele 1.6 seconds to react after the Bus entered his lane, Mr. Steele would have had less than 0.5 seconds to brake or otherwise avoid the collision.  WMATA has not designated any expert to testify that Mr. Steele's speed would have made a difference at that interval and that he could have avoided the collision with 0.5 seconds to spare.  In other words, WMATA has not met its burden to show that Mr. Steele's speed at the exact time the Bus entered his lane contributed to cause the collision.

Even if the jury were to find that Mr. Steele's perception-reaction should be calculated when the Bus entered the left lane of Ellin Road (as opposed to the right lane where Mr. Steele was actually traveling), Mr. Steele was still not contributorily negligent. As the screenshot from the Bus video shows, the Bus entered the left lane approximately two seconds before the crash as well (just a fraction of a second sooner than when the Bus entered the right lane). After applying the average perception-reaction time of 1.6 seconds sponsored by Mr. Plant, Mr. Steele would have been 0.5 seconds from striking the Bus that cut in front of him when the brakes were applied. And again, despite carrying the burden, WMATA has no expert evidence or testimony that Mr. Steele would have been able to stop his motorcycle in 0.5 seconds at 30 mph. The reason that expert testimony is missing from Mr. Plant's report is because common sense dictates that Mr. Steele had no time to brake and avoid the impact once he had an *obligation* to do so, after assuming the proper conduct of Mr. Darby.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

At the very least, the video evidence (coupled with Mr. Plant's own estimates) create genuine disputes of material fact that preclude the entry of summary judgment. Accordingly, WMATA's Motion should be denied.

### C. Even if Mr. Steele was contributorily negligent, the last clear chance doctrine permits a contributorily negligent plaintiff to recover.

Even if the Court finds that Mr. Steele was contributorily negligent, a critical exception (curiously glazed over by WMATA) exists to the defense of contributory negligence: the last clear chance doctrine. This doctrine has been a fixture in Maryland jurisprudence for centuries. *Carter v. Senate Masonry, Inc.*, 156 Md. App. 162, 169, 846 A.2d 50, 54 (2004) (noting more than four dozen reported Maryland cases discussing the doctrine, with the first reference dating back to 1868). Summarizing the doctrine, the Court of Special Appeals of Maryland explained:

> [T]he doctrine of last clear chance permits a contributorily negligent plaintiff to recover damages from a negligent defendant if each of the following elements is satisfied: (i) the defendant is negligent; (ii) the plaintiff is contributorily negligent; and (iii) the plaintiff makes a showing of something new or sequential, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence.

*Burdette v. Rockville Crane Rental, Inc.*, 130 Md. App. 193, 216, 745 A.2d 457, 469 (2000). The theory behind the doctrine of last clear chance is simple: "[I]f the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a proximate cause of the result." *Id.* at 215, 745 A.2d at 468 (internal quotations and citation omitted).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 18 -

The "fresh opportunity" requirement is determinative: "[T]he doctrine will only apply if the acts of the respective parties were sequential and not concurrent." *Carter*, 156 Md. App. at 168, 846 A.2d at 54 (internal quotations and citation omitted). Phrased differently, "[T]he defendant must have had a chance to avoid the injury after the plaintiff's negligent action was put into motion." *Id.*

### A.    WMATA had two last clear chances to avoid the collision.

Here, the three-pronged test articulated in *Burdette* is satisfied twice over; WMATA had not one, but two last clear chances to avoid the collision. *Burdette*, 130 Md. App. at 216, 745 A.2d at 469. Mr. Darby's initial negligence was in failing to monitor the intersection for oncoming traffic to yield the right-of-way to Mr. Steele—who again, was the favored driver at all times. (Ex. 5 at 2). Mr. Steele was then contributorily negligent by exceeding the posted speed limit (if the Court so finds). Thereafter, Mr. Darby had **two** fresh opportunities to avoid the collision: he could, and should, have refused to make the left turn, **and,** once the turn was underway, he could, and should, have stopped the Bus before it reached Mr. Steele's lane of travel. (Ex. 5 at 2). Each act of negligence is summarized by Mr. Lewis:

**Mr. Darby's Original Negligence:**

> Had the bus operator monitored the intersection for oncoming traffic prior to entering and traversing the opposite lanes of traffic, instead of looking to his left, he would have been able to observe the oncoming motorcycle and avoid this collision. In this case, the motorcycle would have been visible to the bus operator for over 4 seconds.

(Ex. 5 at 2).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 19 -

**Two Sequential Acts of Negligence:**

> Then, after the driver began the left turn, he continued across
> the oncoming lanes of traffic, failing to yield the right of way
> to the approaching motorcycle, which was clearly visible. A
> normally attentive driver should have been able to stop the bus
> within approximately 2.3 seconds and 33 feet of distance from
> a speed of 11.6 miles per hour. The bus operator should have
> been able to stop the bus prior to entering the motorcycle's
> lane of travel.

(Ex. 5 at 2).

Maryland courts have found that a driver's failure to stop constitutes a sequential

act of negligence. In *Ritter v. Portera*, a teenager perched on the hood of a moving car.

59 Md. App. 65, 67, 474 A.2d 556, 557 (1984). Rather than slow or stop, the driver

accelerated, and the teenager suffered injuries. *Id.* at 72, 474 A.2d at 559. The Court of

Special Appeals observed that the teenager was undoubtedly contributorily negligent by

perching on the hood, but because the driver could have refused to put the car in motion,

he had the last clear chance to avoid the accident. *Id.* ("Yet, Schiller's contributory

negligence was not as a matter of law the proximate cause of the accident. It is crystal

clear that Portera saw his sister, another young woman, and Schiller on the hood of the

car. He could have, and indeed should have, refused to move the vehicle while they were

so situated.").

In *Carter*, a commercial plumber was working alongside a forklift operator.

*Carter*, 156 Md. App. at 165, 846 A.2d at 52. The forklift operator first delivered a cube

of cinderblock to a scaffold. *Id.* After seeing the forklift, the plumber knelt on the ground

to search for parts. *Id.* The operator moved the forklift behind the plumber, and the

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 20 -

plumber saw the forklift within six to ten feet away from him. *Id.* The forklift operator then maneuvered the machine to place a pan of mortar on the cube of cinderblocks, causing several of the blocks to fall and strike the plumber. *Id.*

The Court of Special Appeals found that sufficient evidence existed for the jury to apply the last clear chance doctrine:

> The jury could have found from the testimony that [the forklift operator] negligently first placed the cube of cinder blocks on the forklift without using a pallet and placed them on the scaffold, possibly breaking some; that later, with the pan of mortar on the forklift, he saw [the plumber] kneeling by the scaffold in harm's way and failed to warn him of the danger; and that, following a pause in his operations, he negligently proceeded to place the mortar on the scaffold, causing the cinder blocks to fall. **There are various points along this continuum of negligent conduct where the jury might have interjected [the plumber's] negligence, but the bottom line is that the jury could have concluded that [the forklift operator] held the final opportunity to avoid the accident.**

*Id.* at 171-72, 846 A.2d at 56 (emphasis added).

Underpinning the court's logic was the fact that the forklift operator "controlled the final force that brought about this accident—the forklift." *Id.* at 172, 846 A.2d at 56. Like in *Ritter,* the court reasoned that the forklift operator had a "fresh opportunity to avoid the accident" by refusing to move the forklift as long as the plumber was in a perilous position. *Id.*

Importantly, Mr. Darby's testimony that he did not see Mr. Steele before the collision does not undermine the applicability of the last clear chance doctrine. *See Thursby v. O'Rourke*, 180 Md. 223, 231, 23 A.2d 656, 660 (1942) (Court of Appeals affirmed that trial court was correct to give last clear chance instruction based on question

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

of "whether the appellant, by use of reasonable care and diligence after he saw the appellee, or by the use of reasonable diligence might have seen the appellee in a position of danger, could have avoided striking him."). As the Court of Appeals of Maryland explained:

> The basis of the doctrine of last clear chance is that the actor either has actual knowledge, **or is under some legal duty which charges him with knowledge**, (a) that if he persists in a course which he is pursuing it will result in injury to another, (b) which the other cannot because of ignorance or disability be reasonably expected to avoid, **(c) when the actor either has or is chargeable with that knowledge in time by the exercise of ordinary care to avoid injuring the plaintiff, but (d) fails to do so.**

*Legum v. State, for Use of Moran*, 167 Md. 339, 173 A. 565, 572 (1934) (emphasis added).

In *Baltimore & O.R. Co. v. Leasure*, a traffic watchman failed to see the plaintiff crossing train tracks at an intersection before the plaintiff was struck by an oncoming train. 193 Md. 523, 533-34, 69 A.2d 248, 252 (1949). Bystanders, however, did see the plaintiff. *Id*. at 534, 69 A.2d at 252. The Court of Appeals of Maryland found that the watchman's failure to see the plaintiff—who could have been seen—raised the issue of last clear chance:

> There is evidence that the plaintiff's predicament was observed by bystanders, who cried out to stop the engine, but the watchman did not observe it until the rear of the tender was within 6 feet of the westerly side of the crossing. We think this evidence was legally sufficient to bring the case within the rule laid down in *Payne v. Healey*, supra.
>
> The watchman was the person primarily responsible for the safety of pedestrians at the crossing. **Even though he could not have anticipated or prevented the plaintiff's reckless act, it was his duty to mitigate the injury by all means at**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 22 -

> **his command. His failure to see what other bystanders saw might, under the circumstances, be considered a negligent act subsequent to the plaintiff's negligence in stepping on the track, and thus raise the issue of last clear chance.**

*Id.*

Mr. Steele had the right of way and was the favored driver at all times.  His alleged speed does not alter that result; Mr. Darby had a legal duty to exercise reasonable care in looking for oncoming traffic and making the left turn, and he was further legally obligated to yield the right of way to Mr. Steele.  That Mr. Darby claims he did not see Mr. Steele before the collision is immaterial; Mr. Steele was there to be seen, and Mr. Darby's failure to exercise reasonable care to spot him does not render the last clear chance inapplicable.

Put differently, Mr. Darby cannot hide behind his original act of negligence in failing to see what was there to be seen.  After that first act of negligence, Mr. Darby had at least two opportunities to avoid the collision by not turning left and by stopping before reaching Mr. Steele's lane (rather than cutting in front of him).  Not only did Mr. Darby have the last clear **chance**, he had the last clear **chances** to prevent the crash that cost Mr. Steele his life.

## IV.  Conclusion

For the reasons set forth above, Plaintiffs respectfully request that Defendant's Motion for Summary Judgment be denied.

<div style="margin-left:40%">

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By: ***/s/ Salvatore J. Zambri***
Salvatore J. Zambri

</div>

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

szambri@reganfirm.com
Emily C. Lagan
elagan@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C.  20036-3521
Ph:   (202) 463-3030
Fax: (202) 463-0667
*Counsel for Plaintiffs*

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LAURITA PULLMAN, Individually and as Personal Representative of the Estate of John Steele, III, *et al.*,** | **:** | |
| | **:** | |
| **Plaintiffs,** | **:** | |
| **v.** | **:** | **Civil No. DKC 22-1304** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | **:** | |
| | **:** | |
| **Defendant.** | | |

### [PROPOSED] ORDER

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiffs' Opposition thereto, and any Reply filed, it is this _____ day of _____, 2023; hereby

ORDERED that Defendant's Motion be, and the same hereby is, DENIED.

SO ORDERED.

_____
Judge Deborah K. Chasanow

cc:    All counsel of record

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LAURITA PULLMAN, Individually and as Personal Representative of the Estate of John Steele, III, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Civil No. DKC 22-1304 |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY | : | |
| | : | |
| Defendant. | | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED**
**MATERIAL FACTS AND STATEMENT OF DISPUTED MATERIAL FACTS**

Plaintiffs, by and through undersigned counsel, hereby respond to Defendant's

Statement of Undisputed Material Facts, and submit this Statement of Disputed Material

Facts.

**I.    Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts**

1.    Plaintiffs Laurita Pullman, personally and as a personal representative of

the Estate of John Steele, III, Alexandra Steele, and Tricia Steele, personally and as parent

and next friend of J.S. (hereinafter collectively referred to as "Plaintiffs"), brought this

suit arising out of the death of John Steele, III (hereinafter "Decedent"). They allege

wrongful death and survival causes of action. *See* Compl. ¶¶ 26-37.

**Response:  Undisputed.**

2.      On April 30, 2021, Decedent was riding a motorcycle eastbound on Ellin Road. *See* Compl. ¶ 16.

**Response:  Undisputed.**

3.      On April 30, 2021, a WMATA bus, operated by Douglas Darby, was traveling westbound on Ellin Road. *See* Compl. ¶ 18.

**Response:  Undisputed.**

4.      The WMATA bus made a left-hand turn on Ellis Road, and Decedent while operating his motorcycle, collided with the side of the WMATA bus. *See* Compl. ¶¶ 19, 21.

**Response:  Undisputed.**

5.      The collision was captured by various cameras depicting Decedent's path of travel and operating behavior, the WMATA bus's turn, and the contact between the vehicles. *See* Exs. A -C, Videos 1-3[1]; Ex. D, Plant Dec.

**Response:  Undisputed.**

6.      These videos were produced in discovery, Plaintiffs have held the videos out in depositions to depict the accident, and both WMATA's expert and Plaintiffs' expert have viewed the videos in connection with their reports. *See* Ex. K, WMATA Responses to Requests for Production, Responses 7, 14,17; Ex. **J,** Kupka Dep. at 40:7-41:7, 44:1-12; Ex. E, Plant Report, p. 2; Ex. H, Lewis Report at 1.

**Response:  Undisputed.**

7.      WMATA's driver (Mr. Darby) testified that he checked the road prior to initiating the left-hand turn, and at the time that the turn was initiated, the roadway was clear. *See* Ex. G, Darby Dep. at 27:21-28:1, 30:21-31:1, 31:8-9, 11.

**Response:  Undisputed that this was Mr. Darby's testimony.  Disputed that Mr. Darby checked the roadway prior to making the left turn (or if he did check it, that he checked it prudently).  As Gary Lewis, Plaintiff's accident reconstructionist, explained in his report:**

> **Reviewing the video of the bus operator's position it appears that the operator is looking slightly to the left and downward from approximately frame 5900 until frame 6024, which covers approximately 4.2 seconds…Based on these camera views, the video frame rate, and the timer visible in the frames, it appears that the bus driver had been looking to his left for approximately 2 seconds before reaching the median, and continued looking to the left as he made his turn for an additional 2 seconds.**
>
> **\*\*\***
>
> **Based on the video timing and the camera view of the bus operator, the operator had traveled for approximately 4.2 seconds, and covered over 70 feet, while looking to his left. Approximately 2 seconds of that time, and 35 feet of distance, was while making a left turn across the oncoming traffic lanes and while the oncoming motorcycle would have been clearly visible to the bus operator.**

**(Ex. 5, Lewis Supp. Rpt. at 1-2).**

8.      The speed limit on Ellin Road where the collision occurred was 30 miles per hour. *See* Ex. E, Plant Report, p. 2; Ex. F, Lewis Dep. at 31:13-20.

**Response:  Undisputed.**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

9.     At the time the collision occurred, Decedent was traveling at least 60 miles per hour. *See* Ex. E, Plant Report, p. 4-5; Ex. F, Lewis Dep. at 3 1 :13-20.

**Response:  Undisputed.**

10.     If Decedent had been traveling at the speed limit of 30 miles per hour, or even 45 miles per hour, when he crested the hill and first became aware of the WMATA bus, he would have avoided the bus and the accident would not have occurred.  *See* Ex. E, Plant Report at 5-7.

**Response:  Disputed to the extent WMATA implies the only way the collision would have been avoided is if Mr. Steele was traveling 30-45 miles per hour. Mr. Steele was visible to Mr. Darby before Mr. Darby began the left turn.  Had Mr. Darby been looking in the direction of oncoming traffic, Mr. Steele would have been visible to him, a reasonably prudent bus operator would have stopped the Bus, would not have cut in front of Mr. Steele, and the collision could have been avoided:**

> **Q.  You noted in that supplemental report that roughly 35 feet of that distance, Mr. Steele would have been clearly visible to the bus driver, right?**
>
> **Mr. Chandonnet: Objection.**
>
> **A. Correct, the forward camera showed the motorcycle's headlight visible before the bus started making lateral movement in the left turn.**
>
> **Q. And you noted in your report that had the bus operator monitored the intersection for oncoming traffic prior to entering the intersection instead of looking to the left, he would have been able to see Mr. Steele, is that right?**
>
> **Mr. Chandonnet:  Objection.**

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 4 -

**A.  Had he looked forward to the bus, the motorcycle would have been visible prior to the bus beginning the left turn at the median crossover.**

**Q.  And if Mr. – if the bus driver, excuse me, had looked into oncoming traffic and seen Mr. Steele, he would have been able to avoid this collision; correct?**
**Mr. Chandonnet: Objection.**

**A. Yes, ma'am.**

**(Ex. 6, Lewis Dep. at 36:17-37:19).**

11.     Plaintiffs' expert, Gary Lewis, did not opine in either his report, deposition, or his supplemental report as to whether Decedent would have avoided the accident, and colliding with the side of the WMATA bus, if going the proper speed, or slower than the traveled speed of at least 60 miles per hour. *See* Ex. F, Lewis Dep.; Ex. H, Lewis Report; Ex. I, Lewis Supp. Report. *See* Compl ¶ **21;** *see also See Exs. A-C, Videos 1-3. See also* Ex. D, Plant Dec.

**Response:  Undisputed that Mr. Lewis did not opine as such but noted that defense counsel had the opportunity to question Mr. Lewis about this at his deposition and failed to do so.**

12.     Decedent died following the accident. *See* Compl. ¶ 23.

**Response:  Undisputed.**

## II.    Plaintiff's Statement of Disputed Material Facts

1.     Whether WMATA had the last clear chance to avoid the collision.  (Ex. 6, Lewis Dep. at 36:17-37:19).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

2.      Whether Douglas Darby's initiation of the left turn was a sequential act of negligence that afforded WMATA a fresh opportunity to avoid the collision. (Ex. 5, Lewis Supp. Rpt. at 1-2; *Carter v. Senate Masonry, Inc.*, 156 Md. App. 162, 169, 846 A.2d 50, 54 (2004)).

3.      Whether Douglas Darby's failure to stop the Bus before entering Mr. Steele's lane of travel was a sequential act of negligence that afforded WMATA a fresh opportunity to avoid the collision.  (Ex. 5, Lewis Supp. Rpt. at 1-2; *Carter v. Senate Masonry, Inc.*, 156 Md. App. 162, 169, 846 A.2d 50, 54 (2004)).

4.      Whether Mr. Darby looked for oncoming traffic before turning left.  (Ex. 5, Lewis Supp. Rpt. at 1-2).

5.      Whether Mr. Darby looked for oncoming traffic after initiating the left turn. (Ex. 5, Lewis Supp. Rpt. at 1-2).

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By: ***/s/ Salvatore J. Zambri***
Salvatore J. Zambri
szambri@reganfirm.com
Emily C. Lagan
elagan@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C.  20036-3521
PH:  (202) 463-3030
Fax: (202) 463-0667
*Counsel for Plaintiffs*