IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAURITA PULLMAN, Individually   :
and as Personal Representative of
the Estate of John Steele, III,   :
*et al*.
                                :
    v.                            Civil Action No. DKC 22-1304
                                :
WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this negligence and wrongful death case brought by Plaintiffs Laurita Pullman, individually and as personal representative of the Estate of John Steele, III ("Decedent"), Alexandra Steele, individually, and Tricia Steele, individually, and as Parent and Next Friend of J.S., minor child, ("Plaintiffs") are the motion for summary judgment (ECF No. 30) and the motion for leave to file video exhibits (ECF No. 32) filed by Defendant Washington Metropolitan Area Transit Authority ("WMATA"). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions will be granted.

I.   **Background**[1]

   **A. Factual Background**

   Plaintiffs are the mother, daughter, wife, and minor child of Decedent, who sadly was fatally injured when his motorcycle collided with a WMATA bus (the "Bus") on April 30, 2021, at about 3:00 p.m.  Douglas Darby ("Mr. Darby" or the "Bus Driver"), a WMATA employee, was operating the Bus traveling westbound on Ellin Road in Prince George's County, Maryland.  Decedent was operating his motorcycle traveling eastbound on Ellin Road at approximately sixty miles per hour.  (ECF Nos. 30-7, at 5; 30-8, at 4).  The posted speed limit on Ellin Road is thirty miles per hour.  Mr. Darby approached the median that separates the eastbound and westbound lanes of Ellin Road and began turning into the New Carrollton Metro Station.  As Mr. Darby turned, the Bus entered Decedent's lane of travel.  Mr. Darby did not see Decedent.  (ECF Nos. 30-9, at 4; 34-4, at 2).  Decedent attempted to slide but collided with the Bus.  Decedent was transported to Prince George's Hospital Center where he later died from his injuries.

   **B. Procedural Background**

   Plaintiffs commenced this action against WMATA under a theory of vicarious liability in the Circuit Court for Prince George's County on April 28, 2022 (ECF No. 4).  On May 31, 2022, WMATA filed

---

[1] Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to the nonmoving party.

a notice of removal pursuant to Md. Code Ann., Transp. § 10-204(81) which gives this court original jurisdiction over actions brought by or against WMATA (ECF No. 1).  On July 17, 2024, WMATA moved for summary judgment (ECF No. 30) and moved for leave to file related video exhibits (ECF No. 32).[2]  Plaintiffs opposed the motion for summary judgment on August 7, 2024 (ECF No. 34), and WMATA replied on August 21, 2024 (ECF Nos. 35; 36).

## II.  Motion for Summary Judgment

### A. Standard of Review

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden to demonstrate the absence of a genuine dispute of material fact.  *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024)(citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)).  If the moving party meets this burden, the burden then shifts to the non-movant to show specific facts demonstrating a genuine issue for trial.  *Id.*  A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the

---

[2]  WMATA's motion for leave to file video recordings as exhibits (ECF No. 32) is unopposed and good cause exists to permit the filings.  The motion will be granted.

party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**B. Analysis**

Plaintiffs assert wrongful death and survival action claims against WMATA, arising from the death of Decedent and sounding in negligence. WMATA argues that it is entitled to summary judgment because Plaintiffs' claims are barred by Decedent's contributory negligence. (ECF No. 30-1, at 5-12). Plaintiffs respond that Decedent was not contributorily negligent, and even if he was, the last clear chance doctrine permits recovery. (ECF No. 34, at 16-25).

As will be discussed below, it is far from clear that the Bus Driver was negligent when he made the left turn across Ellin Road into the Metro Station. Even if he was, however, the undisputed evidence shows that Decedent was travelling well over the speed limit (going at least sixty miles per hour in a thirty miles per hour zone) and that his excess speed prevented him from being able to avoid the collision once he saw the Bus was making the turn. Thus, he was contributorily negligent. There is no evidence of a

fresh opportunity for the Bus Driver to avert the collision and the doctrine of last clear chance does not apply.

**1. Primary Negligence**

In its initial motion, WMATA denies that its driver was negligent but does not move for summary judgment on that ground. The evidence is disputed on that issue.   The parties agree the "Boulevard Rule," codified at Md. Code Ann., Transp. § 21-403, does not apply here because the intersection at issue is not controlled by a stop or yield sign.   (ECF Nos. 30-1, at 6-9; 34, at 16).   Instead, the parties dispute the applicability of Md. Code Ann., Transp. § 21-402(a), which states:

> If a driver of a vehicle intends to turn to the left in an intersection . . . the driver shall yield the right-of-way to any other vehicle that is approaching from the opposite direction and is in the intersection or so near to it as to be an immediate danger.

Md. Code Ann., Transp. § 21-402(a).  WMATA argues that § 21-402(a) does not apply because "[a]t the time that [the Bus Driver] initiated the turn, Decedent's motorcycle was neither in the intersection nor was an 'immediate danger[]'" because Decedent's motorcycle was not visible to the Bus Driver.  (ECF No. 30-1, at 7, n. 2).  Plaintiffs argue that § 21-402(a) applies and because Decedent was the favored driver, the Bus Driver was negligent by failing to yield the right of way to Decedent.  (ECF No. 34, at 16).

When considering the evidence in the light most favorable to the non-moving party, there is a dispute of material fact regarding WMATA's negligence.  It is undisputed that the Bus Driver made a left turn across Ellin Road and into the Metro Station and that he did not see Decedent until after the collision.  (ECF No. 34-4, at 2).  It is also undisputed that there was nothing obstructing the Bus Driver's view when he made the left turn.  (*Id*. at 3).  There is, however, a dispute as to whether the Bus Driver *could have* seen Decedent before making the left turn such that the Bus Driver was required to yield to Decedent.  There are videos and still photos depicting the scene and various events surrounding the collision.  At the time the Bus approached the intersection to start the left turn, Decedent was more than 360, and maybe 400, feet away. (ECF Nos. 30-8, at 4; 34-1, at 8).  Skid marks begin about 134.5 to 142 feet from the site of the collision. (ECF Nos. 30-7, at 12; 30-10, at 14).  Based on review of the Bus's forward-facing camera, Gary Lewis ("Mr. Lewis"), Plaintiffs' expert, opined that:

> Based on the video timing and the camera view
> of the bus operator, the operator had traveled
> for approximately 4.2 seconds, and covered
> over 70 feet, while looking to his left.
> Approximately 2 seconds of that time, and 35
> feet of that distance, was while making a left
> turn across oncoming traffic lanes and while
> the oncoming motorcycle would have been
> clearly visible to the bus operator.

6

. . . In this case, the motorcycle would have
been visible to the bus operator for over 4
seconds.

(ECF No. 34-5, at 2).[3]  From the videos provided by WMATA, it is
unclear exactly how fast Decedent appeared to be traveling and
thus it cannot be determined whether the Bus Driver's left turn
was done in the face of "immediate danger."  There are genuine
disputes of fact as to whether the Bus Driver was negligent.

### 2. Contributory Negligence

WMATA argues that even if its Bus Driver was negligent,
Decedent was contributorily negligent in his operation of his
motorcycle and therefore Plaintiffs are barred from recovery. (ECF
No. 30-1, at 4-6).  Plaintiffs concede that Decedent exceeded the
posted speed limit but argue that does not make him contributorily
negligent as a matter of law.  (ECF No. 34, at 16-19).

In Maryland, "a plaintiff who fails to observe ordinary care
for his own safety is contributorily negligent and is barred from
all recovery, regardless of the quantum of a defendant's primary
negligence." *Harrison v. Montgomery Cnty. Bd. of Educ.*, 295 Md.
442, 451 (1983).  "[I]n a wrongful death action, if the decedent
is found to have been contributorily negligent, then the survivors
are barred from recovery." *Brady v. Walmart Inc.*, No. 21-01412-
AAQ, 2024 WL 2273382, at *17 (D.Md. May 20, 2024) (citing *Dehn v.*

---

[3] Mr. Lewis testified that each driver "would've been able to
see each other at the same time." (ECF No. 30-8, at 4).

*Edgecombe*, 152 Md.App. 657, 693-698 (2003), *aff'd*, 384 Md. 606 (2005)).

The defendant has the burden of proving contributory negligence. *Myers v. Bright*, 327 Md. 395, 403 (1992). "The focus of the contributory negligence defense . . . 'is whether the plaintiff took appropriate precautions to protect his [or her] own interests.'" *Konig v. Ames*, No. 20-3038-ELH, 2021 WL 1561518, at *5 (D.Md. Apr. 21, 2021) (alteration in the original) (quoting *Kassama v. Magat*, 368 Md. 113, 127 (2002)).

"Exceeding the speed limit does not constitute actionable negligence unless it is a proximate cause of injury or damage." *Myers*, 327 Md. at 405 (quoting *Alston v. Forsythe*, 226 Md. 121, 130 (1961). "[S]peed in excess of the posted speed limit is not the proximate cause of an accident when the vehicle is where it is entitled to be and the driver would not have been able to avoid an accident even had he been driving at the lawful speed." *Id.* (quoting Keith C. Miller, Automobile Accident Law and Practice, § 19.10 (1991)).

WMATA produced evidence that Decedent could have avoided the collision if he was driving at the posted speed limit of thirty miles per hour, or even fifteen miles over the limit. David Plant, WMATA's expert, opined that:

> In addition, research shows that the
> perception response time for this path
> intrusion hazard is on average 1.6 second with

a 15th percentile time of 1.0 second and an
85th percentile time of 2.2 seconds.  One
second before the start of the rear tire mark,
the motorcycle was located about 247 feet from
impact.  Using a perception response time of
1.0 seconds and a deceleration rate of 0.4g
(i.e., braking for a traffic light change),
the motorcycle would have come to a stop in
247 feet from a speed of 46 mph.  One and six
tenths (1.6) seconds before the start of the
rear tire mark, the motorcycle was located
about 298 feet from impact.  Using a
perception response time of 1.6 seconds and a
deceleration rate of 0.4g (i.e., braking for
a traffic light change), the motorcycle would
have come to a stop in 298 feet from a speed
of 47 mph.  Two and two tenths (2.2) seconds
before the start of the rear tire mark, the
motorcycle was located about 338 feet from
impact.  Using a perception response time of
2.2 seconds and a deceleration rate of 0.4g
(i.e., braking for a traffic light change),
the motorcycle would have come to a stop in
338 feet from a speed of 47 mph.  **Based on my
analysis of the time distance movements of the
motorcycle, it is my opinion, to a reasonable
degree of scientific certainty, that the
motorcycle would have come to a stop had it
been traveling at 46 mph or less (i.e., 16 mph
above the speed limit) instead of the speed it
was traveling at, which was greater than 62
mph.**

. . . .

In Exhibits 14 and 15, the motorcycle is
about 401 feet from [the Area of Impact].
Based on the surveillance video, the rear of
the bus cleared the right lane of eastbound
Ellin Road in 6.1 seconds from where it was
located in Exhibit 12, 13, 14, and 15 (i.e.,
about 5 seconds before the accident).  At 30
mph (i.e., the speed limit) it would have
taken 9.1 seconds to travel 401 feet.  At 45
mph (i.e., 15 mph over the speed limit) it
would have taken 6.1 seconds to travel 401
feet.  **It is my opinion, to a reasonable degree**

> **of scientific certainty, that had the
> motorcycle been traveling at the speed limit
> or even 15 mph over the speed limit (rather
> than at least 62 mph), this accident would not
> have happened.**

(ECF No. 30-7, at 5-7)(emphasis added).

Plaintiffs do not dispute that Decedent was speeding but, instead, contend that Decedent's speed did not cause the collision. (ECF No. 34, at 17; 31).[4]  Plaintiffs argue that speed over skid distance is the improper lens through which to judge Decedent's conduct because it "ignores that [Decedent] had the right of way and the right to assume that [the Bus Driver] would operate the bus with reasonable care[.]"  (ECF No. 34, at 17).

To support this argument, Plaintiffs cite *Ghirardello v. Malina*, 238 Md. 498 (1965).  (ECF No. 34, at 17).  In *Ghirardello*, Maryland's highest court held:

> [A]lthough a privileged driver is entitled to
> assume that his right of way will be honored
> by an unprivileged operator, he cannot
> continue to rely upon the assumption after he
> discovers, or by the exercise of reasonable
> care should have discovered, that the
> unfavored driver does not intend to yield the

---

[4] Plaintiffs later dispute WMATA's conclusion that Decedent's speed caused the collision only "to the extent WMATA implies the only way the collision would have been avoided is if" Decedent was not speeding.  (ECF No. 34, at 31).  Plaintiffs argue that had the Bus Driver looked, he would have seen Decedent and stopped the Bus, avoiding the collision.  (ECF Nos. 34, at 31; 34-6, at 2-3).  WMATA is not required to show Decedent's speed was the sole cause of the collision, only that it was a "proximate cause," which deprived Decedent of the "opportunity to take some action to avoid the collision."  *Myers*, 327 Md. at 406.

> right of way, and, if after such discovery or
> failure to exercise reasonable care to make
> the discovery, the privileged driver continues
> to pursue his course without exercising
> reasonable care for the safety of others, he
> may be held liable notwithstanding his right
> of way.

*Id.*, at 507.[5]  Plaintiffs contend that Decedent had the right to assume his right of way would be honored by the Bus up until the moment the Bus "entered his lane[.]"   (ECF No. 34, at 17). Plaintiffs argue that once the Bus entered his lane, "it would have taken [Decedent] 1.6 seconds to react," giving Decedent "less than 0.5 seconds to brake or otherwise avoid the collision[.]" (ECF No. 34, at 19).   Plaintiffs contend that because WMATA has not provided evidence to show that Decedent would have been able to stop his motorcycle in 0.5 seconds even doing thirty miles per hour, WMATA has failed to meet its burden.   (ECF No. 34, at 19). This assertion is contrary to the holding in *Ghirardello*.  Decedent could no longer assume that the bus driver would respect his right of way once he "discover[ed], or by the exercise of reasonable care should have discovered" that the Bus did not intend to yield. That point is not when the Bus physically entered Decedent's lane;

---

[5] Before this observation, the court remarked: "And, even though entitled to the statutory right of way, a driver is not relieved from the duty of using reasonable care to avoid a collision. He should proceed at a lawful rate of speed, keep his car under reasonable control, and be careful to avoid injury to others." *Ghirardello*, 238 Md. at 507.

rather, it is when Decedent should have discovered the Bus was making a turn across both lanes.[6]  A driver does not initiate a left turn without intending to complete it.

The undisputed evidence in the record shows that Decedent was driving at sixty miles an hour, was more than 360-400 feet from the site of the collision when the Bus began its turn, and was more than 130 feet away when he applied his brakes.  Had Decedent been driving at a non-negligent speed of thirty, or even forty-five miles an hour, the accident would not have occurred.  Either the Bus would have cleared the intersection before Decedent got there or Decedent would have had adequate time to avoid the collision from the point at which he saw, or should have seen, the Bus.  (ECF No. 30-7, at 7).  Accordingly, WMATA has met its burden of establishing contributory negligence.

### 3. Last Clear Chance

Plaintiffs argue that even if Decedent was contributorily negligent, the last clear chance doctrine applies.  The last clear chance doctrine is an exception to the general prohibition on recovery by a contributorily negligent plaintiff.

> [T]he doctrine of last clear chance permits a
> contributorily negligent plaintiff to recover
> damages from a negligent defendant if each of
> the following elements is satisfied: (i) the
> defendant is negligent; (ii) the plaintiff is

---

[6]  As noted above, Plaintiffs' expert testified that, if the bus driver should have seen Decedent, Decedent should have seen the turning bus.

> contributorily negligent; and (iii) the
> plaintiff makes "a showing of something new or
> sequential, which affords the defendant a
> fresh opportunity (of which he fails to avail
> himself) to avert the consequences of his
> original negligence."

*Carter v. Senate Masonry, Inc.*, 156 Md.App. 162, 168 (2004) (quoting *Burdette v. Rockville Crane Rental, Inc.*, 130 Md.App. 193, 216 (2000)). "'A fresh opportunity' is the operative phrase, for the doctrine will apply only if 'the acts of the respective parties [were] sequential and not concurrent.'" *Carter*, 156 Md.App. at 168 (quoting *Burdette*, 130 Md.App. at 216). "The doctrine 'assumes' that, after the primary negligence of the plaintiff and defendant, 'the defendant could, and the plaintiff could not, by the use of the means available avert the accident.'" *Id.* at 168-69 (quoting *United Rys. & Elec. Co. v. Sherwood Bros.*, 161 Md. 304, 310 (1931)).

Plaintiffs argue that WMATA's primary negligence was the Bus Driver's failure properly to monitor the intersection for oncoming traffic before entering the intersection. (ECF No. 34-5, at 2). Plaintiffs contend that WMATA had two sequential acts of negligence: (1) continuing across the oncoming lanes of traffic and (2) failing to stop the Bus before entering Decedent's lane of travel. (*Id.*).

The Bus Driver's alleged failure properly to monitor the intersection before turning, continuing across the intersection,

and failure to stop before entering Decedent's lane are all part of the alleged primary negligence, making the left turn. Plaintiffs cannot rely on the alleged primary negligence as the basis for asserting the last clear chance doctrine. *See Benton v. Henry*, 241 Md. 32, 35 (1965) ("The defendant's act of primary negligence may not be used again to serve as the last clear chance of avoiding the injury."). There is no evidence in the record of any sequential action or "fresh opportunity" for the Bus Driver to avoid the collision. *See Palenchar v. Jarrett*, 507 F.Supp.2d 502, 513 (D.Md. 2007) ("[W]hile he arguably should have detected the presence of the truck . . . before he actually did, this duty did not constitute a 'fresh opportunity to avoid the harm that occurred,' but instead amounted to a continuing obligation to exercise reasonable care[.]"). Because there is no evidence of a "fresh opportunity" for WMATA to avoid the collision after Decedent's contributory negligence, the doctrine does not apply.

## III. Conclusion

For the foregoing reasons, WMATA's motion for summary judgment will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

14